**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MICHAEL GILLIGAN, | : | |
| | : | Civil Action No. 05-1177 (JBS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CAPE MAY COUNTY | : | |
| CORRECTIONAL CENTER, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

MICHAEL GILLIGAN, Plaintiff pro se
#36783
Ancora Psychiatric Hospital
202 Spring Garden Road
Ancora, New Jersey 08037-9699

**SIMANDLE,** District Judge

Plaintiff Michael Gilligan ("Gilligan"), currently confined at the Ancora Psychiatric Hospital in Ancora, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will (1) grant Gilligan's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and (2) order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint may proceed only in part.

## I.   BACKGROUND

In his Complaint, Gilligan contends that he was housed in inhumane conditions arising out of the overcrowding of the Cape May County Jail ("CMCJ").  He complains that he was made to sleep on the concrete floor for three months with three other inmates.  He suffered headaches and lack of sleep.  Gilligan also alleges that he was denied showers and recreation during this time.

Gilligan next alleges that he was denied medical care.  He was denied his prescribed medications and placed on different medications that purportedly did not help.  His request to see a neurologist for his headaches also was denied.

Plaintiff contends that he complied with the inmate grievance procedure to no avail.  He asserts that these conditions and acts of omission violate his right to due process under the Fourteenth Amendment and his right against cruel and unusual punishment as guaranteed under the Eighth Amendment.  Gilligan brings this action against the Cape May County

2

Correctional Center and its Medical Department; Prison Health Services; Warden Herron; and Sheriff Pierson.  He seeks compensatory damages in the amount of $1 million for pain and suffering, and punitive damages in the amount of $1 million.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, where the plaintiff is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

3

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

4

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Due Process Conditions-of-Confinement Claim

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the

5

Fourteenth Amendment.[1]  See Fuentes v. Wagner, 206 F.3d 335, 341
n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of
whether such a detainee has been deprived of liberty without due
process is governed by the standards set out by the Supreme Court
in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at
341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...
>
> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...
>
> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose.  Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction

---

[1]  It is not clear from the allegations in the Complaint,
but it appears that Gilligan was a pre-trial detainee during the
time that he was confined at CMCJ.

6

> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees <u>qua</u>
> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>Id.</u> at 539 n.20, 561-62.

In <u>Bell</u>, the Supreme Court held that double-bunking under

the circumstances presented in that case did not constitute

punishment, and therefore, did not violate the pretrial

detainees' due process rights.  <u>Id</u>., at 541-43.  The Court

further noted that no due process violation occurred where

pretrial detainees were detained for generally less than 60 days.

However, the Court cautioned that: "confining a given number of

people in a given amount of space in such a manner as to cause

them to endure genuine privation and hardship over an extended

period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, Gilligan alleges that he was forced to sleep on a cold concrete floor for three months due to overcrowding and that he was denied showers and recreation during this time. Three months would seem to be an extended period of time for endurance of these stated privations and hardship. Thus, if these allegations are true, the adverse conditions as alleged may be excessive in relation to their stated purpose, and a court may infer that it is intended as punishment. See Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993). Therefore, the Court is inclined to allow this claim to proceed at this early stage.

8

B.   Inadequate Law Library Claim

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.

Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  <u>See</u>, <u>e.g.</u>, <u>May v. Sheahan</u>, 226 F.3d 876, 883-84 (7th Cir. 2000); <u>Caldwell v. Hall</u>, 2000 WL 343229 (E.D. Pa. March 31, 2000).  <u>But see</u> <u>United States v. Byrd</u>, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered

arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." <u>Bounds</u>, 430 U.S. at 824-25, <u>clarified on other grounds</u>, <u>Lewis v. Casey</u>, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." <u>Reynolds v. Wagner</u>, 128 F.3d 166, 183 (3d Cir. 1997).

Here, Gilligan fails to allege any facts to show that he was denied access to the law library; nor does he allege any actual injury as a result of the purported inadequate law library. In addition, Gilligan has submitted this Complaint without any allegations that his effort to do so was encumbered in any way. Therefore, plaintiff fails to show actual injury with respect to

his single statement claim that he was denied an adequate law library, and this claim must be dismissed without prejudice.

C.   Denial of Medical Care Claim

Lastly, Gilligan alleges that he was denied medical treatment, namely, certain prescribed medication and consultation with a neurologist.  He contends that defendants violated his right against cruel and unusual punishment as guaranteed under the Eighth Amendment.

As noted above, plaintiff was a pretrial detainee when he was allegedly denied medical care.  Thus, his constitutional claims are considered under the due process clause of the Fourteenth Amendments, rather than the Eighth Amendment.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). However, the Third Circuit has held that the "deliberate indifference" standard employed in Eighth Amendment cases also applies to pretrial detainees under the Fourteenth Amendment.

See <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 581-82 (3d Cir. 2003)("In previous cases, we have found no reason to apply a different standard than that set forth in <u>Estelle</u> ... We therefore evaluate Natale's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims under the Eighth Amendment."); <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1067 (3d Cir. 1991), <u>cert</u>. <u>denied</u>, 503 U.S. 985 (1992); <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990); <u>Taylor v. Plousis</u>, 101 F. Supp.2d 255, 262 n.3 (D.N.J. 2000).  <u>See</u> <u>also</u> <u>Hubbard</u>, 399 F.3d at 166 n.22. Accordingly, since the Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment, the Court will apply the deliberate indifference standard of the Eighth Amendment in analyzing plaintiff's denial of medical care claim. <u>See</u> <u>Simmons</u>, 947 F.2d at 1067 (the rights of a detainee are at least as great as those of a convicted prisoner).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Rouse v. Plantier</u>, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials

13

that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale, 318 F.3d at 582.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).

14

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  <u>Andrews v. Camden County</u>, 95 F. Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F. Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended

15

treatment.  See Rouse, 182 F.3d at 197.  The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Gilligan alleges that defendants refused prescribed medications, but gave him other medications, which he claims did not work.  He also contends that he was denied a neurologist, but never identifies his serious medical needs.  At most, plaintiff complains of headaches.

The Court finds that these allegations, as presented, fail to state a claim of denial of medical care.  First, plaintiff is unable to meet the first standard, which requires that he show a serious medical need.  Second, as to the denial of prescribed medications, plaintiff admits that he was given medication, just not the ones he preferred.  This allegation merely shows a difference of medical opinion, not deliberate indifference, which is insufficient to state a constitutional deprivation under §

1983.  White v. Napoleon, 897 F.2d at 110;  Andrews, 95 F.

Supp.2d at 228; Peterson, 551 F. Supp. at 145.  Moreover, there

is no indication that the defendants intentionally delayed or

refused medical treatment for punitive reasons.  Therefore, the

Court will dismiss this claim without prejudice.[2]

V.  CONCLUSION

For the reasons set forth above, Gilligan's access-to-courts

claim and the claim alleging denial of medical care must be

dismissed without prejudice, pursuant to 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a

claim.  Because it is conceivable that Gilligan may be able to

supplement his pleading with facts sufficient to state an access-

to-courts claim and a denial of medical care claim, the Court

will permit plaintiff to move for leave to file an amended

---

[2]  Finally, it should be noted that plaintiff's § 1983 claim
alleging denial of medical care as against the defendants, CMCJ,
Prison Health Services, and the Warden and Sheriff, in their
administrative capacities may likely be dismissed since
supervisor liability is not cognizable in § 1983 actions.  Local
government units and supervisors typically are not liable under §
1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985).  "A
defendant in a civil rights action must have personal involvement
in the alleged wrongs, liability cannot be predicated solely on
the operation of respondeat superior.  Personal involvement can
be shown through allegations of personal direction or of actual
knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson
v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997);
Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).
    Here, it would appear that the defendants are liable only
under a theory of respondeat superior.  Therefore, the claim may
be dismissed without prejudice for failure to state a claim.

complaint.[3]  Plaintiff's remaining claim alleging unconstitutional conditions of confinement may proceed.   An appropriate order follows.


 s/ Jerome B. Simandle
Jerome B. Simandle
United States District Judge

Dated:  **July 8, 2005**

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.